UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                     CR. NO. 14-20562

   v.

                                     HON. DAVID M. LAWSON

TAMMIE BROWNLEE,

          Defendant.

_____/

## MOTION FOR COMPASSIONATE RELEASE

As this Court is aware, COVID-19 has created unprecedented danger to incarcerated people. COVID-19 has now killed more U.S. prisoners, over the course of just a few months, than the U.S. death penalty has in the last two decades.[1]

Tammie Brownlee is at a facility, Carswell FMC, that has experienced a severe outbreak of COVID-19. Six inmates have died of the virus there, and more than 530 have contracted it, with at least nine current active cases. One of the inmates who died was only 30 years old. Ms. Brownlee suffers serious physical ailments, including hypertension, obesity, chronic Hepatitis C, osteoarthritis, and borderline diabetes. She is particularly susceptible to severe complications from COVID-19. In

---

[1] Douglas Berman, *The new death penalty: COVID has now killed more US prisoners in months than the US death penalty has in the last two decades*, SENT'G LAW & POLICY BLOG, Aug. 23, 2020, https://perma.cc/92C3-6NSB.

fact, she contacted the virus once, resulting in a serious hospitalization. She is living in fear of contracting it again, perhaps fatally, and emerging science shows there is no guarantee a person cannot contract this potentially deadly illness repeatedly. In fact, just this week another inmate at FMC Carswell died after being deemed "recovered" by BOP staff from COVID-19. (Ex. 9, Press Release.)

In addition, Ms. Brownlee has completed a majority of her eight-year sentence, with a home detention date in September 2021, and a release date in March 2022. She has completed the 12-hour and nonresidential drug programs. She also completed classes on avoiding criminal thinking, anger management, and life skills. Her rehabilitation shows that she is not a danger if released early. She is willing to abide by whatever terms of supervision the Court sees fit.

Counsel communicated with opposing counsel of record, and the government stated that it does not concur in the requested relief. For the reasons discussed in the attached brief, Ms. Brownlee respectfully requests compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Respectfully submitted,

*/s/ Benton C. Martin*
*/s/ Natasha D. Webster*
FEDERAL COMMUNITY DEFENDER
613 Abbott St., Suite 500
Detroit, Michigan 48226
PHONE:  (313) 967-5832
Dated: August 28, 2020          EMAIL:  Benton_Martin@fd.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

                                              CR. NO. 14-20562

v.

                                              HON. DAVID M. LAWSON

TAMMIE BROWNLEE,

               Defendant.

_____/

**BRIEF IN SUPPORT OF**
**MOTION FOR COMPASSIONATE RELEASE**

## I.    BACKGROUND

Tammie Brownlee has long suffered serious health problems. At the time of sentencing before this Court, back in 2015, she suffered obesity (with a BMI of more than 30), hypertension, anemia, arthritis, and Hepatitis C. PSR ¶ 58. She stood before this Court for sentencing on a bank robbery. Initially, this Court sentenced her as a career offender, to 151 months' imprisonment. (R. 27, Judg., PgID 81.) But as a result of an appeal, the government agreed to a resentencing. This Court imposed a sentence of 96 months' imprisonment. (R. 36, Amd. Judg., PgID 150.)

Ms. Brownlee has been incarcerated since September 2014. She is eligible for home confinement in September 2021, roughly a year from now, and has an ultimate

1

release date of March 11, 2022. Her health condition has not improved while in custody. Her obesity is worse, escalating to morbid obesity (defined as a BMI over 40), and her hypertension, arthritis, and complications from Hepatitis C continue. She also reports being recently diagnosed with borderline diabetes.

## II.   LEGAL STANDARD FOR COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) permits sentencing judges to grant a reduction of sentence, after considering the § 3553(a) factors, if "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."

As the BOP faces a rapidly escalating health crisis because of COVID-19, several courts in this district have recognized that the pandemic, for an offender with pre-existing health problems rendering them vulnerable to severe illness from COVID-19, is an extraordinary situation warranting release under § 3582(c)(1)(A)(i). *See, e.g., United States v. Jelinek,* No. 15-20312, 2020 WL 3833125, at *1 (E.D. Mich. July 8, 2020) (Parker, J.); *United States v. Nazzal,* No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020) (Lawson, J.); *United States v. Rahim,* No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (Edmunds, J.); *United States v. Loyd,* No. CR 15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (Tarnow, J.); *United States v. Agomuoh,* No. 16-20196, 2020

WL 2526113, at *1 (E.D. Mich. May 18, 2020) (Levy, J.); *United States v. Pomante,*

No. 19-20316, 2020 WL 2513095 (E.D. Mich. May 15, 2020) (Hood, C.J.).

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

There is no exhaustion barrier in this case. Section 3582(c)(1)(A)(i) gives this

Court authority to grant the requested relief after "the lapse of 30 days from the

receipt of such a request by the warden of the defendant's facility." Ms. Brownlee

first requested release in Spring 2020, and received a boilerplate denial letter on

April 27, 2020. (Ex. 1, Admin. Request, at 1.) On May 14, 2020, she requested

reconsideration of this decision, citing her age (54 years old) and explaining that she

is at high risk from COVID-19 because of her medical conditions of hypertension,

liver disease, arthritis, borderline diabetes, and obesity. (*Id.* at 2.) She received

another denial letter on July 6, 2020. (*Id.* at 4.)

### IV.   EXTRAORDINARY AND COMPELLING REASONS WARRANT RELEASE

### A.   Release is consistent with the policy statements

Ms. Brownlee's release is consistent with the Sentencing Commission's

policy statements for two reasons. First, her health condition, combined with this

pandemic, "substantially diminishes the ability of the defendant to provide self-care

within the environment of a correctional facility and from which [he] is not expected

to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Release in these circumstances is

consistent with this policy statement. *See, e.g., United States v. Reddy,* No. 13-CR-

20358, 2020 WL 2320093, at *5 (E.D. Mich. May 11, 2020); *United States v. Amarrah,* No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020).

Finally, Ms. Brownlee also presents "Other Reasons" under U.S.S.G. § 1B1.13, cmt. n. 1(D), warranting compassionate release, because the COVID-19 pandemic is devastating prison populations, and she is subject to particular danger because of her health conditions. *See, e.g., Miller v. United States,* No. CR 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020).

**B. Ms. Brownlee's health presents an extraordinary reason for release.**

"The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." CDC, *People of Any Age with Underlying Medical Conditions*, https://perma.cc/WT36H2VQ. Ms. Brownlee's medical records, though counsel does not have a complete set, confirm she suffers from at least three COVID-19 risk factors: hypertension, morbid obesity, and chronic Hepatitis C. (Exs. 2-3, Med. Recs.) She also suffers arthritis, which at least one court has recognized as contributing to vulnerability from COVID-19. *See United States v. Hope*, No. 213-016-1, 2020 WL 4207107, at *4 (S.D. Ga. July 22, 2020) (granting release based, in part, on the basis, on a person's rheumatoid arthritis while at FMC Carswell). Further, she reports being recently diagnosed with borderline diabetes.

*Hypertension.* Many courts, including several in this district, "have identified hypertension as an underlying medical condition that renders a prisoner higher-risk,

weighing against continued detention during the COVID-19 pandemic." *United States v. Sanders*, No. 19-cr-20288, ECF No. 35, PgID 202–03 (E.D. Mich. Apr. 17, 2020) (citing *United States v. Patino*, No. 18-cr-20451, 2020 WL 1676766, at *2 (E.D. Mich. Apr. 6, 2020)); *United States v. Mines*, No. 4:18-cr-00552, 2020 U.S. Dist. LEXIS 112175, at *3 (N.D. Ohio June 26, 2020) (granting release to an inmate with hypertension); *Perez-Perez v. Adduci*, No. 20-10833, 2020 WL 2305276, at *5–6 (E.D. Mich. May 9, 2020) (noting that a prisoner who suffered from hypertension faced a heightened risk of severe medical consequences or death if the prisoner contracted COVID-19).

As Judge Leitman has explained, "[m]any district courts have recognized that hypertension increases the likelihood of severe complications from COVID-19." *United States v. Goins,* No. 11-CR-20376, 2020 WL 3064452, at *5 (E.D. Mich. June 9, 2020). And "[s]o has the Secretary of the Department of Health and Human Services." *Id.* Although initial CDC guidance named only *pulmonary* hypertension as a risk factor for COVID-19, "at least three courts that have addressed this issue have concluded that non-pulmonary hypertension is a risk factor associated with severe COVID-19 outcomes." *Id.* Further, the CDC now recognizes that high blood pressure may increase a person's risk from COVID-19. CDC, COVID-19, *Serious Heart Conditions and Other Cardiovascular and Cerebrovascular Diseases*, https://perma.cc/DB9D-QDAH.

5

***Morbid obesity.*** At the time of sentencing, Ms. Brownlee weighed 170 pounds. She is 5'0" tall, so this represented a BMI of approximately 33.2. She has gained significant weight while in custody, and now reports weighing 248 pounds. Her BMI is thus now approximately 48.4, putting her at grave risk.

At least two judges in this district have released an incarcerated person, in light of the COVID-19 pandemic, where the only identified risk factor was a BMI over 30 and *under* 40. *United States v. Mitchell,* No. 17-20652, 2020 WL 4284311, at *3 (E.D. Mich. July 27, 2020) (granting release to inmate with BMI of 31 to 32); *United States v. Roe*, No. 15-20581, ECF No. 374 (E.D. Mich. July 16, 2020) (granting release to inmate with BMI over 35). Judge Levy released Roe from FCI Elkton because of his obesity with a BMI of over 35 but below 40. *Roe*, No. 15-20581, ECF No. 374. Another judge in this district granted on the basis of a BMI of 30.6 in combination with latent TB. *United States v. Ireland,* No. 17-20203, 2020 WL 4050245, at *4 (E.D. Mich. July 20, 2020).

The CDC has labeled obesity as a risk factor with the "strongest and most consistent evidence" for an association with severe illness from COVID-19. *See* CDC, Medical Conditions Evidence Table. While it initially recognized only a BMI over 40 as at high risk, based on developing research, the CDC now includes obesity with a BMI of 30 or above as part of the high risk group. *Id.*; CDC, COVID-19, *Who Is at Increased Risk for Severe Illness?*, https://perma.cc/TNN7-UJZ2.

The CDC's list of risk factors is now in line with research detailing that individuals less than 60 years old, with a BMI over 35 are more than twice as likely to need acute medical care related to COVID-19 than those with a BMI less than 30. Jennifer Lighter et al., *Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission*, Clinical Infectious Diseases (2020), https://perma.cc/LP4H-V3F4. Further, individuals under 60 years old with BMIs between 35 and 40 were 3.6 times more likely to need care in an Intensive Care Unit than those with BMIs under 30. *Id.*

In fact, obesity is one of the most serious risk factors for younger individuals admitted to the hospital as a result of COVID-19. David A. Kass et al., *Obesity could shift severe COVID-19 disease to younger ages*, The Lancet (May 16, 2020), https://perma.cc/5HFW-89TA. A study at John Hopkins documented a correlation between obesity and worse outcomes for younger individuals who contract COVID-19. *Id.* The authors explain: "Obesity can restrict ventilation by impeding diaphragm excursion, impairs immune responses to viral infection, is pro-inflammatory, and induces diabetes and oxidant stress to adversely affect cardiovascular function." *Id.*

For these reasons, in multiple cases, the government has agreed that a BMI over 30 satisfies the "extraordinary and compelling" standard. For example, in the *Ireland* case, the government conceded that the defendant's BMI of 30.6 "means he satisfies the 'extraordinary and compelling' standard under 1B1.13(1)(A)." *United*

*States v. Ireland*, No. 17-20203, R. 35-1, Gov. Email, PgID 200 (E.D. Mich. July 17, 2020). This position is in line with Main Justice guidance based on the new CDC guidelines, which concede "Defendant's body mass index (BMI) above 30 constitutes an extraordinary and compelling reason warranting a reduction sentence." (*See* Ex. 7, July 30 Ltr.) Ms. Brownlee's obesity is much more severe, and so is the risk to her health.

***Chronic Hepatitis C.*** Hepatitis C suppresses a person's immune system by tricking the body into triggering suppression of cytokine signaling regulators. Trinity College Dublin, *How Hepatitis C 'Ghosts' Our Immune System*, Science Daily (June 5, 2019), https://www.sciencedaily.com/releases/2019/06/190605105940.htm. This dampens a person's immune and "basically dulls the normal immune response to viral infection." *Id.* Further, chronic hepatitis C can leave a person permanently immunocompromised. Strunz, Benedikt, et al., *Irreversible impact of chronic hepatitis C virus infection on human natural killer (NK) cell diversity*, Cell Stress (July 25, 2018), https://pubmed.ncbi.nlm.nih.gov/31225489/. Thus, even if Ms. Brownlee's HCV has been successfully treated, or will be in the future, her immune system remains compromised.

For this reason, several courts have granted compassionate release as a result of a person's hepatitis C diagnosis. *See, e.g., United States v. Hammond*, 1:02-CR-294, 2020 WL 1891980, at *8 (D.D.C. Apr. 16, 2020) (granting compassionate

release to a defendant with hepatitis C); *United States v. McGraw*, 2:02-Cr-18, 2019 WL 2059488, at *1–2 (S.D. Ind. May 9, 2019) (granting compassionate release to 72-year-old inmate with diabetes, kidney disease, Hepatitis C, and other issues).

*Borderline diabetes.* The CDC recognizes diabetics as people at a high risk of death or serious illness from COVID-19. CDC, At Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. For that reason, courts have also granted release to people with borderline diabetes, especially when in combination with other conditions: "Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release." *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (citing *United States v. Sosa*, No. 19-CR-39-02-JD, 2020 WL 2227038, at *1 (D.N.H. Apr. 21, 2020), *report and recommendation adopted*, No. 19-CR-39-02-JD, 2020 WL 2219173 (D.N.H. May 6, 2020) (finding prediabetes and obesity warranted pre-sentencing release); *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020) (granting temporary pretrial release and noting "the government does not contest that defendant suffers from prediabetes and hypertension, which puts him at higher risk for more severe, debilitating illness from COVID-19")); *Cotton v. United States*, No. CR 16-20222-8, 2020 WL 3488752, at *3 (E.D. Mich. June 26, 2020) (granting release to inmate with prediabetes, among other conditions).

*COVID-19.* Ms. Brownlee reports that she already contracted COVID-19, on July 4, 2020, resulting in a significant hospitalization. She was rushed by ambulance to a local area hospital where she received plasma transfusions. She remained at the hospital for two weeks. During that time, her blood pressure spiked, resulting in administration of steroids and blood-clot medication. She also received insulin. She feared for her life during this time, and still does given uncertainty about whether the virus can be contracted again.

Because this "is a novel virus, researchers cannot definitively conclude whether [a person] could contract it again." *Snell v. United States*, No. CR 16-20222-6, 2020 WL 2850038, at *3 (E.D. Mich. June 2, 2020). Inmates should "not be a guinea pig to test this possibility." *Id.* A court in this district has granted release to an inmate, Kevin Backstrom, whose only health issue was that he contracted the virus and purportedly recovered. *United States v. Backstrom*, No. 13-20597, 2020 WL 4596820, at *3 (E.D. Mich. Aug. 11, 2020) (explaining Backstrom's "ordeal with the virus created a medical condition warranting release within the meaning of U.S.S.G. § 1B1.13 comment n.1(A)"). "While the BOP may have deemed Backstrom recovered, the Court has no scientific basis to deduce that he cannot contract the disease again." *Id.*

Troublingly, when an inmate "tests positive for COVID-19 but is deemed asymptomatic, the BOP conducts no medical evaluation of that patient beyond daily

temperature checks." *United States v. McCall*, 2020 WL 2992197, at \*4 (M.D. Ala.,
June 4, 2020). This is important because at least **four** inmates, including one at FMC
Carswell, have died in BOP custody just weeks after being deemed "recovered" from
the virus:

- Marie Neba, age 56, died at FMC Carswell eight days after BOP staff
  decided that she had recovered from COVID-19. Ex. 9, BOP Press Release,
  *Inmate Death at FMC Carswell* (Aug. 26, 2020).



  **U.S. Department of Justice**
  **Federal Bureau of Prisons**

  **FOR IMMEDIATE RELEASE**                    Contact: Office of Public Affairs
  August 26, 2020                              202-514-6551

  **Inmate Death at FMC Carswell**

  WASHINGTON, D.C.:  On Thursday, July 3, 2020, inmate Marie Neba tested positive for
  COVID-19 at the Federal Medical Center (FMC) Carswell, in Fort Worth, Texas, and was
  immediately placed in isolation.  On Tuesday, August 4, 2020, Ms. Neba was considered
  recovered by medical staff as determined by CDC guidelines.  On Monday, August 10, 2020,
  Ms. Neba was evaluated by institutional medical staff for abdominal pain and shortness of
  breath, and was admitted to the facility's Nursing Care Unit.  On Wednesday, August 12, 2020,
  she was transported to a local hospital for further treatment and evaluation.  While at the
  hospital, her condition declined, and on Monday, August 24, 2020, she was placed on a
  ventilator.  On Tuesday, August 25, 2020, Ms. Neba, who had long-term, preexisting medical
  conditions, which the CDC lists as risk factors for developing more severe COVID-19 disease,
  was pronounced dead by hospital staff.

  Ms. Neba was a 56-year-old female who was sentenced in the Southern District of Texas to a
  900-month sentence for Conspiracy to Commit Health Care Fraud, Health Care Fraud, Aiding
  and Abetting, False Statements Relating to Health Care Matters, Conspiracy to Pay and Receive
  Health Care Kickbacks, Payment and Receipt of Health Care Kickbacks, and Conspiracy to
  Commit the Laundering of Monetary Instruments.  Ms. Neba had been in custody at FMC
  Carswell since September 26, 2017.

- Adrian Solarzano, at Terminal Island, was hospitalized and died from
  COVID-19-related complications after the BOP showed him recovered from
  the virus. BOP Press Release, *Inmate Death at Terminal Island* (May 27,
  2020), www.bop.gov/resources/news/pdfs/20200527_press_release_trm.pdf.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

**FOR IMMEDIATE RELEASE**
May 27, 2020

Contact: Office of Public Affairs
202-514-6551

**Inmate Death at the FCI Terminal Island**

WASHINGTON, D.C.:  On April 16, 2020, inmate Adrian Solarzano, tested positive for
COVID-19 at the Federal Correctional Institution (FCI) Terminal Island in San Pedro,
California.  On May 10, 2020, in accordance with Centers for Disease Control and Prevention
(CDC) guidelines, Mr. Solarzano was converted to a status of recovered following the
completion of isolation and presenting with no symptoms.

On Friday, May 15, 2020, Mr. Solarzano was admitted to the local hospital, due to complaints of
chest pains and anxiety.  He was tested for COVID-19 by hospital staff on May 15 and 16, 2020,
with negative results.  Mr. Solarzano's condition continued to decline.  On Sunday, May 24,
2020, Mr. Solarzano, who had long-term, pre-existing medical conditions, which the CDC lists
as risk factors for developing more severe COVID-19, was pronounced dead by hospital staff.

- Second, Gerald Porter died at FMC Lexington after twice testing negative for
  COVID-19. Press Release, *Inmate Death at FMC Lexington* (July 31, 2020),
  www.bop.gov/resources/news/pdfs/20200731_press_release_lex.pdf.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

**FOR IMMEDIATE RELEASE**
July 31, 2020

Contact: Office of Public Affairs
202-514-6551

**Inmate Death at FMC Lexington**

WASHINGTON, D.C.:  On Friday, May 29, 2020, inmate Gerald Porter tested positive for
COVID-19 and was immediately placed in isolation at the Federal Medical Center (FMC)
Lexington in Lexington, Kentucky.  On July 10, 2020, Mr. Porter was released from isolation
based upon two COVID-19 negative tests.  On Wednesday, July 22, 2020, Mr. Porter was
admitted to the local hospital due to a stroke, where his condition continued to deteriorate.  On
Wednesday, July 29, 2020, Mr. Porter, who had pre-existing medical conditions, which the
CDC lists as risk factors for developing more severe COVID-19 disease, was pronounced
dead by hospital staff.

- Third, Robert Hague-Rogers, an inmate at FMC Fort Worth, died after being
  hospitalized for shortness of breath. Although Mr. Hague-Rogers twice tested
  negative for COVID-19, he had a positive antibody test, indicating he had the
  virus in the past. Press Release, *Inmate Death at FMC Fort Worth* (Jul. 3,
  2020), www.bop.gov/resources/news/pdfs/20200703_press_release.pdf.



**U.S. Department of Justice**
**Federal Bureau of Prisons**

**FOR IMMEDIATE RELEASE**                           Contact: Office of Public Affairs
July 3, 2020                                                          202-514-6551

**Inmate Death at FMC Fort Worth**

WASHINGTON, D.C.:   On April 21, 2020 and April 23, 2020, Inmate Robert Hague-Rogers
was tested for COVID-19 with negative results.   On April 27, 2020, Mr. Hague-Rogers was
seen by Health Services staff at the Federal Medical Center (FMC) Fort Worth for shortness of
breath.   At that time, Mr. Hague-Rogers was transported to a local hospital for further treatment
and evaluation.   Although he never tested positive for COVID-19, he did have a positive
antibody test.   On Friday, July 3, 2020, Mr. Hague-Rogers, who had long-term, pre-existing
medical conditions, which the CDC lists as risk factors for developing more severe COVID-19
disease, was pronounced dead by hospital staff.

For an individual with serious risk factors for COVID-19 who has allegedly fully recovered from the virus, "the evidence reflects that he would not be protected from the possibility of future reinfection." *McCall*, 2020 WL 2992197, at *6. For that reason, in *McCall*, the court refused to "play Russian Roulette with McCall's life" and thus granted his motion for compassionate release. *Id.* at *7.

There is a lack of medical evidence to support the claim that a person who previously tested positive for COVID-19, and is deemed recovered, is less susceptible to serious adverse health outcomes than they were before they were exposed to the virus. Further, it does not appear that any antibody test has been conducted on Ms. Brownlee, so there is no way to know whether she even has developed antibodies that might provide even some temporary protection.

The CDC explains that any immunity from a prior infection of COVID-19, "including duration of immunity, to SARS-CoV-2 infection is not yet understood." https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html Patients with MERS-

13

CoV infection are unlikely to be reinfected shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with Covid-19. Other researchers have found that what immunity a person has after recovery from COVID-19 "is uncertain," and that "some patients seem not to develop a humoral immune response." Robert D. Kirkcaldy, COVID-19 and Postinfection Immunity, JAMA May 11, 2020, https://jamanetwork.com/journals/jama/fullarticle/2766097. For other coronaviruses, immunity seems to wane quickly, and what is unknown is how long immunity lasts. Antonio Regalado, *What if immunity to covid-19 doesn't last?*, MIT Tech. Rev. (Apr. 27, 2020), https://www.technologyreview.com/2020/04/27/1000569/how-long-are-people-immune-to-covid-19/. Moreover, people who are immunocompromised, like Ms. Brownlee, may have less capacity to develop immunity to COVID-19. Katarina Zimmer, *What Do Antibody Tests For SARS-CoV-2 Tell Us About Immunity?* (Apr. 15, 2020), https://www.the-scientist.com/new-opinion/what-do-antibody-testsfor-sars-cov-2-tell-us-about-immunity--67425.

For these reasons, federal courts continue to release otherwise qualified inmates who have previously tested positive for the coronavirus. *See Snell*, 2020 WL 2850038, at *3 (granting release to inmate who purportedly recovered from COVID-19); *McCall*, 2020 WL 2992197, at *6-7 (same); *United States v. Yellin*, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020) (releasing "recovered" inmate and

explaining that "the possibility of reinfection persists" because COVID-19 "is so new that the scientific community does not yet have answers to whether reinfection is possible."); *United States v. Common*, 2020 WL 3412233, at *4 (C.D. Ill. June 22, 2020) (releasing 39-year-old inmate suffering hypertension, obesity, and asthma, who served 18 months of 120-month sentence, citing "the very real risk of relapse or reinfection" of COVID-19 and the ongoing side effects); *United States v. Brown*, Case No. 2:18-cr-360, Dkt. No. 35, Page 3 (N.D. Ala. May 22, 2020) (releasing COVID-19 positive inmate who also suffered from asthma because "in the event [his] condition worsens, medical treatment in and around" the prison "may well be inadequate"); *United States v. Arreola-Bretado,* No. 3:19-CR-03410-BTM, 2020 WL 2535049, at *3 (S.D. Cal. May 15, 2020) (releasing inmate who tested positive for COVID-19 after concluding she will receive superior medical care outside of custody).

This Court should reach the same conclusion here. COVID-19 continues to present a grave risk to Ms. Brownlee given her health status and the high rate of infection of FMC Carswell, and this risk presents "extraordinary and compelling" reasons for release as defined in § 3582(c)(1)(A)(i).

**C. Conditions at FMC Carswell warrant release.**

"The CDC has warned that COVID-19 poses a heightened risk to those incarcerated in jails and prisons." *United States v. Padilla*, No. 19-CR-03331-GPC,

15

2020 WL 3100046, at *6 (S.D. Cal. June 11, 2020) (releasing inmate at FMC Carswell). And FMC Carswell has had particular problems containing the virus. Six inmates have died from the diseases there, and more than 530 have contracted the virus, with nine current active cases. https://www.bop.gov/coronavirus/. As one court has explained, "[t]he abominable COVID-19 statistics at FMC Carswell suggests that the trust this Court once placed in the BOP to care for an inmate with [the defendant]'s complicated health conditions is no longer warranted." *United States v. Goode*, No. 14 CR 810-07 (CM), 2020 WL 4586254, at *5 (S.D.N.Y. Aug. 10, 2020).

At least two judges in this district have granted compassionate release to inmates at FMC Carswell. *United States v. Reddy*, No. 13-CR-20358, 2020 WL 2320093, at *1 (E.D. Mich. May 11, 2020) (Leitman, J.) (releasing inmate with diabetes, hypertension, back pain, osteoarthritis, and depression); *Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842, at *1 (E.D. Mich. Apr. 16, 2020) (Tarnow, J.) (releasing inmate with diabetes, heart disease, and asthma).

Several other courts also have granted release from FMC Carswell, in large part over government objection. *See, e.g., United States v. Houston*, No. CR 03-37-GF-BMM, 2020 WL 4673133, at *1 (D. Mont. Aug. 12, 2020) (releasing inmate with asthma, COPD, heart disease, sleep apnea obesity, bronchitis, and diabetes); *United States v. Galaz*, No. 15-CR-02559-GPC, 2020 WL 4569125, at *1 (S.D. Cal. Aug. 7, 2020) (releasing 33-year-old with "obesity, a history of smoking, tuberculosis, and

16

depression"); *United States v. Provost*, No. 3:18CR42, 2020 WL 4274570, at *5 (E.D. Va. July 24, 2020) (releasing inmate with COPD, asthma, and hypertension 27 months into a 72-month sentence); *United States v. Gluzman*, No. 7:96-CR-323 (LJL), 2020 WL 4233049 (S.D.N.Y. July 23, 2020) (releasing 71-year-old with several health issues sentenced to life for murder); *Hope*, 2020 WL 4207107, at *3 (releasing inmate with arthritis and Sjogrens Syndrome); *United States v. Recinos*, No. 112CR00035DADBAM, 2020 WL 4194080, at *4 (E.D. Cal. July 21, 2020) (releasing 59-year-old inmate with MS, hypertension, and asthma); *United States v. Collins*, No. 15-10188-EFM, 2020 WL 3971391, at *2 (D. Kan. July 14, 2020) (releasing inmate with diabetes, Hepatitis C, and hypertension); *United States v. Joseph*, No. 18-CR-156, 2020 WL 3270885, at *1 (E.D. Wis. June 17, 2020) (releasing inmate with pancreatitis, diabetes, and heart problems); *United States v. Miller*, No. 3:15-CR-132-2 (VLB), 2020 WL 3187348, at *5 (D. Conn. June 15, 2020) (releasing inmate with pulmonary diseases and an immune disorder); *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *1 (S.D. Tex. May 29, 2020) (releasing inmate with hypertension and diabetes); *United States v. Pinkerton*, No. 15-CR-30045-3, 2020 WL 2083968, at *5 (C.D. Ill. Apr. 30, 2020) (same); *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *4 (E.D. Tenn. Apr. 15, 2020) (releasing inmate with COPD).

## V.     THE § 3553(A) FACTORS FAVOR RELEASE

The § 3553(a) factors, especially weighed during the pandemic, favor release. The Court never intended Ms. Brownlee to serve a life sentence.

***Ms. Brownlee's History and Characteristics.*** As described at sentencing, as a child, Ms. Brownlee saw her father physically assault her mother on numerous occasions. She did not realize that her father's abuse was not normal until she was much older. PSR ¶53. She herself was then physically abused by her mother and sister, and sexually abused by a neighbor and her aunt's boyfriend. *Id.*

In was not until later in life, after many of her prior convictions occurred, that Ms. Brownlee was diagnosed with bipolar disorder and schizoaffective disorder. PSR ¶60. She also has a history of drug addiction, with abuse of crack cocaine, heroin, and prescription pills.

Ms. Brownlee has made significant progress while in custody. She completed the 12-hour and nonresidential drug abuse program. (Ex. 5, Certificates, 1, 5.) She took part in a program on life trauma through the RESOLVE program, "a cognitive behavioral program designed to address the trauma related mental health needs of inmates." (Ex. 5, Certificates, 2; Ex. 6, RESOLVE Description.) She has trained as a suicide-watch companion, a program where inmates are trained to sit with other inmates on suicide watch. (Ex. 5, Certificates, 3-4.) She completed anger management and criminal thinking classes. (*Id.* at 11-12.) She also has taken courses

on life skills, participated in religious programming, and completed educational programs. (*Id.* at 7-9; Ex. 4, Progress Report Excerpt.)

Counsel is aware of only two disciplinary infractions during Ms. Brownlee's six years of incarceration, and no violent or assaultive behavior. In 2019, she lost good time credit for taking five gel pens during a counseling session instead of one pen as instructed. (Ex. 8, Discipline.) And in May of this year, she received an infraction for insolence. (*Id.*) By way of explanation, the incident occurred after Ms. Brownlee was reprimanded for sitting while waiting in the phone line rather than standing, and out of frustration, she responded rudely. Counsel notes that this infraction was deemed a "300 series" discipline, which is less serious than 100- or 200-level infractions. Her discipline was loss of phone privileges and commissary for 45 days, not loss of good-time credit. Respectfully, these disciplinary actions are not an indication that she is a danger to the community if released, and do not outweigh the serious health risks to her continued incarceration.

***Nature of the Offense***. As explained in her original sentencing memorandum, although Ms. Brownlee was struggling with a drug addiction and mental health issues at the time of the offense, she recognized that her decision to commit the offense was a terrible one and has expressed remorse for the trauma she caused.

To her credit, Ms. Brownlee followed through while in custody on obtaining drug treatment and taking courses on criminal thinking and life skills. These courses

will reduce her risk of recidivism. She also has served nearly six years in custody, by far her longest term of incarceration. This period of imprisonment, in light of the pandemic, is sufficient but not greater than necessary to reflect the severity of the offense and to deter future criminal conduct of Ms. Brownlee and others.

***Protecting the Public***. Ms. Brownlee is willing to abide by any terms of supervision—home confinement, GPS monitoring, and further treatment—that this Court imposes. Ms. Brownlee has stayed in close contact with her mother and siblings while in custody. If released, Ms. Brownlee will live with her mother, Gracie Irby, in Auburn Hills, Michigan.

Counsel has spoken to Ms. Brownlee's son Jarrell Brownlee, and her brother Eric Brownlee, who are supportive of her and explained that the family will work to assist Ms. Brownlee if released. Eric Brownlee explained to counsel that, despite his sister's history, he has seen the changed in her over her time in incarceration, and that if this Court were to allow her release, he believes his sister is prepared to be successful. In light of the global COVID-19 pandemic, and Ms. Brownlee's particular susceptibility to COVID-19, this Court should grant release.

## VI.   CONCLUSION

Ms. Brownlee asks this Court to grant her motion for compassionate release,

reduce her sentence to time served, and order her immediate release.

<div style="margin-left: 45%;">

Respectfully submitted,

*/s/ Benton C. Martin*
*/s/ Natasha D. Webster*
FEDERAL COMMUNITY DEFENDER
613 Abbott St., Suite 500
Detroit, Michigan 48226
PHONE:  (313) 967-5832
EMAIL:   Benton_Martin@fd.org

</div>

Dated: August 28, 2020

21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                            CR. NO. 14-20562

   v.

                                            HON. DAVID M. LAWSON

TAMMIE BROWNLEE,

        Defendant.

_____/

CERTIFICATE OF SERVICE

    I certify that I submitted this filing on the date indicated above using the

CM/ECF system, which will send notification to opposing counsel.

                              */s/ Benton C. Martin*
                              FEDERAL COMMUNITY DEFENDER
                              613 Abbott St., Suite 500
                              Detroit, Michigan 48226
                              PHONE:  (313) 967-5832
                              EMAIL:  Benton_Martin@fd.org

Dated: August 28, 2020